UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

-----------------------------------------------------------x

| | | |
|---|---|---|
| DARRELL SIMMONS, an individual, | : | |
| | : | |
| Plaintiff, | : | CASE NO: |
| | : | |
| vs. | : | JUDGE: |
| | : | |
| BOARD OF COMMISSIONERS OF THE LOUISIANA STADIUM AND EXPOSITION DISTRICT, as the political entity which owns the Mercedes-Benz Superdome; KYLE FRANCE, in his official capacity as chief executive of the BOARD OF COMMISSIONERS OF THE LOUISIANA STADIUM AND EXPOSITION DISTRICT; and ASM GLOBAL, LLC, | : | MAGISTRATE: |
| Defendants. | : | |

-----------------------------------------------------------x

## **COMPLAINT**

Plaintiff, DARRELL SIMMONS, by and through his undersigned counsel, hereby files this Complaint and sues the BOARD OF COMMISSIONERS OF THE LOUISIANA STADIUM AND EXPOSITION DISTRICT, as the political entity which owns the Mercedes-Benz Superdome (hereinafter referred to as "LSED"), for injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* (hereinafter "Americans with Disabilities Act" or "ADA"); sues KYLE FRANCE, in his official capacity as chairperson and chief executive of the LSED, for injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the ADA; and sues ASM GLOBAL, LLC (hereinafter "ASM") for declaratory and injunctive relief, attorneys' fees, and costs pursuant to

1

Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and for injunctive and declaratory relief and damages pursuant to the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 *et seq.*, (hereafter "LCHR"); and, in support thereof, states as follows:

## JURISDICTION AND PARTIES

1. This is an action for relief pursuant to Title II and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter referred to as "Americans with Disabilities Act" or "ADA") and the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 *et seq.*, (hereafter "LCHR").

2. This Court is vested with original jurisdiction over the Federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367, as such claims arise out of the same case or controversy as the Federal claims.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property at issue in this lawsuit is located in the Parish of Orleans, in the Eastern District of Louisiana.

4. Plaintiff, Mr. Simmons, is a resident of Baton Rouge, Louisiana.

5. Mr. Simmons is a qualified individual with a disability under the ADA. Mr. Simmons has T-3 paraplegia.

6. Due to his disability, Mr. Simmons is substantially impaired in several major life activities, including walking and standing, and relies on a wheelchair for mobility.

7. Upon information and belief, the LSED is the political entity which owns the real property, improvements, and programs which are the subject of this action, to wit: the Superdome,

located at 1500 Sugar Bowl Drive, New Orleans, LA 70112 (hereinafter "Superdome" or "the Property").

8. Upon information and belief, Kyle France, named in his official capacity as the chairman of the LSED, is the official with chief executive power with respect to the LSED, and bears responsibility in his official capacity as chief executive for administering, operating, and maintaining the LSED's public goods and services.

9. Upon information and belief, ASM is limited liability company organized in the State of Delaware and doing business in Orleans Parish, Louisiana.

10. Upon information and belief, ASM is domiciled at 800 West Olympic Blvd, 3rd Floor, Los Angeles, California 90015, with a Louisiana principal place of business located in New Orleans, Louisiana.

11. Upon information and belief, pursuant to an agreement between ASM and the LSED, ASM operates the programs, services, accommodations which are offered at the Property.

12. Upon information and belief, during the Bayou Classic and its associated events, ASM operates the programs, services, and accommodations offered at the Superdome.

13. Upon information and belief, ASM is responsible for any violations of Title III of the ADA at the Property.

14. LSED and Mr. France are responsible for any violations of Title II of the ADA at the Property and are also responsible for the actions of its contractor, ASM. *See* 28 C.F.R. § 35.130(b)(1) ("a public entity, in providing any aid, benefit, or service, may not, directly *or through contractual, licensing, or other arrangements*, discriminate against individuals

with disabilities.") (emphasis added).

15. Mr. France is sued as the chairman of the LSED pursuant to the doctrine of *Ex parte Young*.

16. All Defendants are obligated to comply with the ADA.

17. ASM, LSED, and Mr. France had explicit notice of their obligations under the ADA to accommodate patrons who use wheelchairs for mobility. To the extent Defendants were previously unaware of their obligation to accommodate, a Judgment was entered against them after a trial on the merits by the Honorable Judge Susie Morgan on July 7, 2019. *See Smith v. Board of Commissioners of the Louisiana Stadium and Exposition District et al*, Civ. No. 17-7267 (E.D. La. filed July 28, 2017).

18. Upon information and belief, all Defendants are individually and/or vicariously responsible for the violations of the ADA and/or the LCHR which are at issue in this litigation.

## COUNT I: VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT AS TO ASM

19. Mr. Simmons realleges and reavers Paragraphs 1 - 18 as if they were expressly restated herein.

20. The Property is a place of public accommodation, subject to the ADA, generally located at 1500 Sugar Bowl Drive, New Orleans, LA 70112.

21. The Superdome is an events and exhibition venue, located in New Orleans, Louisiana.

22. The Superdome is used for hosting events and live entertainment events.

23. The Bayou Classic is an annual event that takes place in New Orleans over the weekend following Thanksgiving, culminating in a college football game between Grambling State

University and Southern University. One of the events associated with the Bayou Classic is the Greek Show & Battle of the Bands.

24. Mr. Simmons enjoys visiting New Orleans and intends to return to the Superdome to see shows, watch live events, and attend the annual events of the Bayou Classic.

25. Mr. Simmons has visited the Property in the past and plans to visit the Property again in the future, as a patron, visitor, and ADA tester.

26. On or about November 28, 2019, 2019, Mr. Simmons' girlfriend, Shakina Ortega, purchased three (3) tickets online for the Bayou Classic Greek Show & Battle of the Bands ("Battle of the Bands"), which was to be held on November 29, 2019 at the Superdome. These tickets were purchased from frontrowtickets.com. Prior to purchasing the tickets, Ms. Simmons called frontrowtickets.com to inquire about wheelchair accessible tickets. Ms. Simmons was informed that all of the tickets were general admission and Mr. Simmons should request an accessible seat when they arrive at the Superdome for the show.

27. On or about November 29, 2019, Ms. Ortega purchased another ticket for the Battle of the Bands.

28. On November 29, 2019, Mr. Simmons, Ms. Ortega, Mr. Simmons' minor daughter, and Mr. Simmons' nephew, Michael Collins traveled from Baton Rouge to New Orleans to attend the Battle of the Bands. Upon arriving at the Superdome, they requested designated accessible parking. They were led to an area of the parking lot that was not accessible in that the parking spaces contained no access aisles. Because of this, Mr. Simmons was forced to squeeze between his vehicle and the adjacent vehicle to transfer into his wheelchair. To be clear, the parking spaces were not designated-accessible in any way.

29. The four arrived early and once inside the Superdome, they inquired about wheelchair accessible seats. A female usher brought Mr. Simmons and his family to a section with wheelchair accessible seats at Row 36 of the 100 Level, near the 50 yardline. Mr. Simmons and his family were satisfied with the seats.

30. Prior to the beginning of the Battle of the Bands, Ms. Ortega and Mr. Simmons' daughter left their seats next to Mr. Simmons to purchase some concessions. When Ms. Ortega and Mr. Simmons' daughter tried to return to the section where Mr. Simmons and Mr. Collins were seated, they were stopped by a male usher who told them they were not allowed in that section.

31. Ms. Ortega informed the male usher that she was sitting with Mr. Simmons, who was in a wheelchair accessible seat. At first, the male usher told Ms. Ortega that she and Mr. Simmons' daughter could not sit with Mr. Simmons because he was only allowed to have one companion. Ms. Ortega and Mr. Simmons' daughter agreed to move to another section so that Mr. Collins could remain seated in a companion seat next to Mr. Simmons. While they wanted to all sit together, they were willing to split up if the rules dictated that Mr. Simmons could only have one companion.

32. However, when Ms. Simmons and her daughter began to leave, a female supervisor came by and informed the group that none of them were allowed to sit in that section at all, even if Mr. Simmons required wheelchair accessible seating. The female supervisor told them that they did not pay for the seats in row 36, so they would have to sit somewhere else.

33. Mr. Simmons and his family left that section per the female supervisor's instructions and tried to find other wheelchair accessible seating.

6

34. They then attempted to enter an elevator to try to find wheelchair-accessible seats in the upper decks. The elevator operator told them that all four of the group could not enter the elevator together even though there was plenty of room for all four members of the group plus the elevator operator to travel in the elevator.

35. After nearly twenty minutes of searching for each other, the group was reunited in the 200 Level, but were unable to locate any accessible seating once they were in the 200 Level.

36. After searching without success for accessible seating in the 200 Level, another usher told Mr. Simmons and his family that there were no accessible seats in the 200 Level.

37. Mr. Simmons then went back to the 100 Level and attempted to park his chair behind the chain that separates Row 36 from the general concourse. However, an usher told him that he could not stay in this location and told him to leave the area.

38. Ms. Ortega went to the Guest Services desk and asked for an accommodation. She was told that she could try to get her money back and was sent to a different Guest Services desk.

39. Upon being told that he could not sit anywhere in the Superdome, Mr. Simmons became very frustrated and upset and left the Superdome.

40. At this second Guest Services desk, Ms. Ortega spoke to a woman named Ms. Julien. Ms. Julien informed Ms. Ortega that the ushers should have upgraded her tickets to wheelchair-accessible tickets. However, Ms. Julien did not offer to upgrade their tickets or ask that Mr. Simmons return to the Superdome to sit in a wheelchair-accessible seat.

41. In the days after the Battle of the Bands, Ms. Ortega called the Superdome to complain about their experience and try to get their money back for the tickets they purchased. A man called Ms. Ortega back and when she recounted her story to him, he replied "oh no,

they're not supposed to do that" and told her that he would investigate and get back to her. He never called back.

42. Under the ADA, a public accommodation is required to modify its policies, practices, or procedures to mitigate any disparate impact upon persons with disabilities. 28 CFR § 36.302(a).

43. Public accommodations must also take affirmative measures to ensure that such persons have an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are available from that public accommodation. 42 U.S.C. § 12182; 28 CFR §§ 36.202(b), 36.201(a), 36.203(a), 36.302(a).

44. The ADA's implementing regulations contain specific mandates for public accommodations regarding ticketing, accessible seating, and ticket sales. 28 CFR § 36.302(f).

45. By failing to provide wheelchair accessible seating for disabled individuals, ASM effectively precluded wheelchair users such as Mr. Simmons from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR §§ 36.201(a), 36.202(b), 36.204, 36.302(a), and 36.302(f).

46. By refusing to adequately assist Mr. Simmons in locating alternative wheelchair accessible seating, ASM failed to comply with the specific requirements of 28 CFR § 36.302(f).

47. At the November 29, 2019 Battle of the Bands, Mr. Simmons was further discriminated against by being subjected to the humiliation, fear, and anxiety of not being provided with wheelchair accessible seating so that he could watch the show with his family. There is

simply no analogous experience to which an ambulatory patron could have been subjected; no adequate comparison can be made for ambulatory individuals.

48. Mr. Simmons fears that if he returns to the Property to attend the annual Battle of the Bands or any other event, he would again be subjected to discrimination on the basis of his disability.

49. Mr. Simmons intends on traveling to the Property in the near future to attend the Bayou Classic and its associated events, and also to see if ASM has modified its discriminatory policies, practices, and procedures.

50. Upon information and belief, modification of the policies, practices, and/or procedures of ASM would provide Mr. Simmons an equal opportunity to participate in, or benefit from, the goods, services, and accommodations which ASM offers to the general public.

51. Independent of his intent to return as a patron to the Property, Mr. Simmons additionally intends to return as an ADA tester to determine whether the policies, practices, and procedures which are the subject of this suit have been remedied.

52. Mr. Simmons has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Mr. Simmons is entitled to have his reasonable attorneys' fees, costs, and expenses paid by ASM pursuant to 42 U.S.C. § 12205.

## COUNT II: VIOLATIONS OF THE LOUISIANA COMMISSION ON HUMAN RIGHTS AS TO ASM

53. Mr. Simmons repeats and realleges all preceding paragraphs in support of this claim.

54. At all times relevant to this action, the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 et. seq., (hereafter "LCHR") has been in full force and effect and has applied the conduct of ASM.

55. At all times relevant to this action, Mr. Simmons has experienced substantial limitations to several major life activities, including walking and standing; has suffered an anatomical loss affecting the musculoskeletal system; and has been an individual with a disability within the meaning of the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2232(3)(a).

56. At all times relevant to this action, ASM has been operating a qualified as place of public accommodation, resort, or amusement as defined by LA. REV. STAT. ANN. § 51:2232(9) by virtue of either supplying services to the general public, soliciting and accepting the patronage of the general public, or having been supported directly or indirectly by government funds.

57. The LCHR prohibits discriminatory practices and provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of . . . disability." LA. REV. STAT. ANN. § 51:2247.

58. The LCHR extends relief to "any person deeming himself injured by" discrimination in violation thereof. LA. REV. STAT. ANN. § 51:2264.

59. ASM discriminated against Mr. Simmons, on the basis of disability, in violation of LA. REV. STAT. ANN. § 51:2247, by denying him the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered at the Property.

60. Mr. Simmons deems himself injured by ASM's discrimination and brings suit under the LCHR to recover compensatory and nominal damages for the injuries and loss he sustained

as a result of ASM's discriminatory conduct, deliberate indifference, and/or intentional discrimination as alleged herein above.

61. Mr. Simmons is further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the LCHR. LA. REV. STAT. ANN. § 51:2264.

62. With regards to Mr. Simmons' request for nominal damages, it is Mr. Simmons' position that an award of nominal damages would confer significant civil rights to the public, as a judgment in his favor against ASM, regardless of the amount, would deter them from discriminating against people with disabilities in the future.

### COUNT III: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AS TO LSED AND KYLE FRANCE

63. Mr. Simmons repeats and realleges all preceding paragraphs in support of this claim.

64. Mr. Simmons continues to desire to visit the Property, but fears that he will experience serious difficulty again in light of the failures of ASM to make adequate and sufficient accommodations for Mr. Simmons as a wheelchair user. As the owner of the Property, LSED and Mr. France are vicariously liable for any discrimination which occurs at the Property under the ADA by ASM.

65. The DOJ's implementing regulations of Title II of the ADA clearly affirm that "a public entity, in providing any aid, benefit, or service, may not, directly or *through contractual, licensing, or other arrangements,* discriminate against individuals with disabilities." 28 C.F.R. § 35.130(b)(1) (emphasis added).

66. LSED and Mr. France have failed to adopt and implement adequate and sufficient policies and procedures and are therefore vicariously liable for all policies and procedures which

are used by ASM at the Property that deny Mr. Simmons meaningful access to the goods, services, and programs which are offered at the Property.

67. Upon information and belief, LSED and Mr. France control the seating layout at the Property and/or provide the seating infrastructure at the Property, such that they are independently liable for ADA violations at the Property.

68. LSED and Mr. France have discriminated against Mr. Simmons by denying him full access to the services, programs, and/or activities by failing to make their facilities readily accessible as required by 42 U.S.C. §12132 and its implementing regulations at 28 C.F.R. § 35.101 *et. seq.*

69. Specifically, the actions set forth in paragraphs 1-41 show that ASM is effectively excluding wheelchair patrons from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR §§ 35.130(a), 35.130(b)(1)(i), 35.130(b)(1)(ii), 35.130(b)(3)(i), and 35.130(b)(7)(i).

70. LSED and Mr. France have discriminated against Mr. Simmons in violation of the ADA by excluding and/or denying Mr. Simmons the full and equal benefits of their services, programs, and/or activities by failing to, *inter alia*, make adequate and sufficient accommodations for mobility impaired individuals such as Mr. Simmons, as detailed above in paragraphs 1-41.

71. Upon information and belief, LSED and Mr. France continue to discriminate against Mr. Simmons by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no

individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals.

72. Upon information and belief, Mr. Simmons has been denied access to, and has been denied the benefits of services, programs and/or activities of the LSED, and have otherwise been discriminated against and damaged by LSED and Mr. France because of LSED and Mr. France's discrimination, as set forth above. Mr. Simmons will continue to suffer such discrimination, injury, and damage without the immediate relief provided by the ADA as requested herein.

73. 42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

74. Mr. Simmons has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs, and litigation expenses from the LSED and Mr. France pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

75. Mr. Simmons is without adequate remedy at law and is suffering irreparable harm.

76. Pursuant to 42 U.S.C. § 12131, *et seq.*, this Court is provided authority to grant Mr. Simmons' injunctive relief including an order that LSED and Mr. France alter the facilities at Property and alter their policies at the Property to make the programs and/or activities offered there readily accessible to and useable by Mr. Simmons as defined by the ADA.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Simmons demands judgment against LSED, Mr. France, and ASM and requests the following relief:

A.  That this Court declare that the Property owned, leased and/or operated by Defendants is in violation of the ADA and the LCHR;

B.  That this Court declare that the Property, programs and activities owned, operated and administered by LSED and Mr. France are in violation of Title II of the ADA;

C.  That this Court enter an Order directing Defendants to alter the Property and Defendants' policies, practices, and/or procedures to make the Property accessible to and useable by individuals with mobility-related disabilities to the full extent required by the ADA and the LCHR;

D.  That this Court award reasonable attorneys' fees, costs (including expert fees), and other expenses of suit to Mr. Simmons pursuant to the ADA and the LCHR;

E.  That this Court award damages, including nominal damages, to Mr. Simmons pursuant to LCHR for the harm caused by ASM's discriminatory practices, including Mr. Simmons' emotional distress, invasion of his civil rights, and for upset stemming from segregation;

F.  That this Court award such other and further relief as it deems necessary, just and/or proper under Title II and Title III the ADA and the LCHR.

Respectfully Submitted,

**BIZER & DEREUS, LLC**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)

>andrew@bizerlaw.com
>Garret S. DeReus (LA # 35105)
>gdereus@bizerlaw.com
>Emily Westermeier, Esq. (LA # 36294)
>ewest@bizerlaw.com
>3319 St. Claude Ave.
>New Orleans, LA 70117
>T: 504-619-9999; F: 504-948-9996
>
>By:/s/ Andrew D. Bizer
>     ANDREW D. BIZER